JUDGE SWAIN

'08 CIV 10412

Robert W. Ottinger (RWO-8879)
The Ottinger Firm, PC
19 Fulton Street, Suite 408
New York, New York 10038
(212) 571-2000
Attorneys for Plaintiff

RECEIVED
DEC 02 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW JOHNSON,

            Plaintiff,

vs.

KOENIG VERBINDUGSTCHNIK AG,
KVT KOENIG LLC and FARMINGTON
GROUP, INC.

            Defendants.

Civil Action No.

**COMPLAINT**

---

Plaintiff, Andrew Johnson, ("Mr. Johnson"), through his attorneys, alleges in his

Complaint against defendants, KoenigVerbindugstchnick AG ("Koenig AG" or "Defendant

Koenig AG"), KVT Koenig, LLC ("KVT Koenig" or "Defendant KVT Koenig") and

Farmington Group, Inc. ("Farmington" or "Defendant Farmington") (collectively,

"Defendants")  as follows:

## I. INTRODUCTION

1.      This case concerns a Swiss manufacturing company, Defendant Koenig

Verbindugstchnik AG, which has monopolized and/or engaged in a conspiracy to monopolize

the manufacture of the expander plug (the "Product", defined in greater detail, infra) in the

American and Canadian markets (the "Relevant Market", defined in greater detail, infra).

2.      Koenig AG obtained a monopoly and/or engaged in a conspiracy to monopolize the Product in the Relevant Market by acquiring its only manufacturing competitor in the Relevant Market, Defendant Farmington, located in Connecticut, and its distributor in the United States and Canada, Sherex Industries, Ltd of Towanda, New York. ("Sherex Industries").

3.      Through its acquisition of Sherex Industries, Koenig AG sought to preclude potential competitors not only in the distribution, but also the manufacture of the Product in the Relevant Market by extracting non-competition agreements (the "Non-Competition Clauses", defined infra) from Mr. Johnson, the former President and co-owner of Sherex Industries.

4.      Mr. Johnson, who has sixteen (16) years of experience in the expander plug business, is ready, willing and able to create a new business to compete with Koenig AG in the manufacture of the Product in the Relevant Market, but he cannot enter the Relevant Market due to the broad Non-Competition Clauses extracted from Mr. Johnson in connection with a hostile takeover of Sherex Industries in connection with Koenig AG's efforts to consolidate its monopoly for the manufacture of the Product in the Relevant Market.

5.      The Non-Competition Clauses are overbroad because they preclude Mr. Johnson from competing not only as a distributor – the sole role of Sherex Industries in the Relevant Market for the Product -- but also in the completely novel role of manufacturer of the Product in the Relevant Market.  The Non-Competition Clauses serve no legitimate purpose other than to protect Koenig AG's monopoly over manufacturing, as well as distributing and selling, the Product in the United States and Canada.

2

6.     By this action, Mr. Johnson seeks equitable relief reforming the Non-Competition Clauses so he can compete as a manufacturer in the Relevant Market for the Product with Defendants.  Mr. Johnson also seeks damages caused by Defendants' anticompetitive conduct and other actions which harmed Mr. Johnson.

## II. **THE PARTIES**

7.     Plaintiff, Mr. Johnson, is a resident of Amherst, New York and is the former co-owner and President of Sherex Industries,   He is the current co-owner and President of Sherex Fastening Solutions, LLC, a manufacturing concern located in Towanda, New York (which he founded in 2004), and he is a co-owner and director of Sherex Taiwan, a manufacturer of blind rivet nuts for Sherex Fastening Solutions LLC.

8.     Defendant, Koenig  AG, is a leading manufacturer of fastening and sealing technology products, including expander plugs.  The company is headquartered in Dietikon, Switzerland, its products are sold worldwide, and it owns subsidiaries in Germany, Poland, Czech Republic, Austria and the United States.

9.     Upon information and belief, Defendant KVT Koenig is a Delaware limited liability company that is the apparent successor to Koenig Fastening Technology US, LLC which was a party to the Stock Purchase Agreement (defined, infra) through which Johnson's interest in Sherex Industries, was purchased.  KVT Koenig may be located in Madison, Connecticut.  KVT Koenig may also be the successor liable for or have assumed certain obligations of Sherex Industries, since the latter is no longer an active corporate entity.

10.     Upon information and belief, Defendant Farmington Group, Inc. is a subsidiary of Defendant Koenig AG.  It is located in Madison, Connecticut and is a manufacturer of the Product in the Relevant Market.  Upon information and belief,

Farmington may be the successor liable for or have assumed certain obligations of Koenig Fastening Technology US, LLC and/or Sherex Industries, where the latter is no longer an active corporate entity.

### III. JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to Section 4 of the Sherman Act, 15 U.S.C. § 4, and 28 U.S.C. §§ 1331 and 1337(a).  The Plaintiff brings this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, and for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15.

12.    The Court further has jurisdiction over the state law claims for which Plaintiff seeks relief pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

13.    Venue in this district is appropriate  under 28 U.S.C. § 1391, 15 U.S.C. § 22, the forum selection clause of the governing documents and applicable law recognizing the authority of such clauses.

### IV. STATEMENT OF FACTS

#### The Product and the Relevant Market

14.    Expander plugs are metal devices that seal holes in high pressure hydraulic and pneumatic components such as valves, hydraulic blocks and hydraulic pumps ("expander plugs" or the "Product").  Expander plugs are widely used throughout the United States and Canada in high pressure fluid power components for the off road and industrial markets such as hydraulic equipment for, agriculture, construction, material handling, hydraulic lifts, machine tools, presses and industrial machinery. (the "Relevant Market").

15.     Koenig AG once held the patent for expander plugs and enjoyed a legal monopoly for expander plugs in the United States.  Koenig AG distributed expander plugs to its American and Canadian customers through Sherex Industries.

16.     Soon after Koenig AG's patent expired in 1993, another firm, Farmington, copied Koenig AG's expander plug design and grew into its largest competitor in the United States and Canada.  Farmington manufactured its own expander plugs and developed its own distribution network in the United States and Canada.  Koenig AG slowly lost market share to Farmington over the years until both Farmington and Koenig AG held roughly equal shares of the American and Canadian expander plug market.

17.     Before November 6, 2007, Sherex Industries and Farmington were the two primary distributers of expander plugs in the United States and Canada.  Sherex Industries distributed expander plugs manufactured by Koenig AG, and Farmington distributed expander plugs that it manufactured.

Koenig AG Reestablishes Its Monopoly
And Seeks To Acquire Sherex Industries

18.     On November 6, 2007, in a bid to reestablish its monopoly for expander plugs in the United States and Canada, Koenig AG acquired Farmington and became the *de facto* exclusive manufacturer of the Product in the "Relevant Market".

19.     With the acquisition of Farmington, Koenig AG holds ninety to ninety-five percent (90-95%) of the manufacturing capability for expander plugs in the Relevant Market.

20.     On November 6, 2007, Ueli Hartman, the Chief Executive Officer of Koenig AG, called Mr. Johnson to inform him of Koenig AGs's acquisition of Farmington.

21.     On December 16, 2007, Mr. Johnson and the other co-owner of Sherex Industries, Kevin Scherf, visited Mr. Hartman in St. Gallen Switzerland.  During this visit,

Mr. Hartman stated that Koenig AG was interested in acquiring Sherex Industries and that

Koenig AG would cancel its supply agreement with Sherex Industries if favorable terms could

not be reached.  Sherex Industries was dependent on Koenig AG to manufacture and supply

expander plugs since Farmington, now under Koenig AG control, was no longer an

independent source of expander plugs for the Relevant Market.

      22.     On January 15, 2008, Koenig AG sent Mr. Johnson and Mr. Scherf an

unsigned letter of intent to acquire Sherex Industries and outlined some of the terms,

including a provision that Mr. Johnson and Mr. Scherf give Koenig AG the right of first

refusal to acquire Sherex Fastening Solutions, another manufacturing operation that they

owned and which had no connection to Koenig AG.  Koenig AG also asked Mr. Johnson to

work part-time as a consultant for Sherex Industries after the acquisition by Koenig AG and

that Mr. Scherf serve as Chief Executive Officer of Sherex Industries.

The Stock Purchase Agreement,<br>
The Consulting Agreement<br>
<u>And The Non-Competition Clauses</u>

      23.     Over the next several months, Koenig AG negotiated the terms of its purchase

of Sherex Industries with Mr. Johnson and Mr. Scherf.  Koenig AG repeatedly threatened to

cancel its supply agreement with Sherex Industries which would render the company

worthless.  At the insistence of Koenig AG,  Mr. Johnson and Mr. Scherf would be subject to

no less than a four (4)  year non-competition clause in the documents governing the

transaction, and they gave Koenig AG the first right of refusal to acquire Sherex Fastening

Solutions.

      24.     On May 22, 2008, Koenig AG, through Koenig Fastening Technology US,

LLC (to which Defendant KVT Koenig is the apparent successor) completed the acquisition

6

of Sherex Industries and the parties executed a stock purchase agreement, dated May 21, 2008 (the "Stock Purchase Agreement") and, among other documents, a consulting agreement with Mr. Johnson, dated May 22, 2008 (the "Consulting Agreement").

25.     Through Section 7.9 and other relevant sections of the Stock Purchase Agreement and Section 8 of the accompanying Consulting Agreement, Mr. Johnson became subject to broad non-competition clauses (the "Non-Competition Clauses").

26.     Section 7.9 of the Stock Purchase Agreement barred, among others, Mr. Johnson from "designing, developing, manufacturing, marketing, selling and distributing hydraulic and fluid power sealing products, including expansion plugs and SAE plugs" in the United States and Canada for four (4) years.   Section 7.9 of the Stock Purchase Agreement further barred Mr. Johnson from having an interest in or advising or rendering services (as described therein) "to any Person that engages in the Business within the Territory."

27.     Section 8 of the Consulting Agreement included a similar prohibition upon Mr. Johnson with a bar upon Mr. Johnson's participation in the specified activities "for a period of twenty-four months after the termination of the Consultant's engagement . . . ."

28.     The Non-Competition Clauses were overbroad from the outset since Sherex Industries engaged solely in the business of distributing expander plugs in the United States and Canada.

29.     The Stock Purchase Agreement also gave Koenig AG the right of first refusal to buy Sherex Fastening Solutions.

The Price of the Product Escalates in the
Relevant Market With Koenig AG's Acquisition
of Farmington and Sherex Industries

30.     Following the acquisition of both Farmington and Sherex Industries,

Defendants substantially raised prices for the Product in the Relevant Market.

31.     Upon information and belief, in June 2008, Defendants raised prices ten

percent (10%) for expander plugs sold in the Relevant Market.

32.     Upon information and belief, in August 2008, Defendants again raised prices

for expander plugs sold in the Relevant Market – this time by thirty to forty percent (30-40%).

33.     Upon information and belief, Defendants plan another price increase for

expander plugs in the Relevant Market in January 2009.

34.     Since Defendants hold ninety to ninety-five percent (90-95%) of the

manufacturing distribution and sales capability for expander plugs in the United States and

Canada, customers of the Product in the Relevant Market had little choice but to pay the

higher prices demanded by Defendants.

Mr. Johnson Intends To And Is Prepared To
Enter The Relevant Market
For The Product In A New Role:  Manufacturer

35.     Mr. Johnson intends to and is prepared to enter the Relevant Market for the

Product in a new role – manufacturer.

36.     As a principal of Sherex Industries, Mr. Johnson engaged solely in the

distribution of expander plugs in the United States and Canada, and never engaged in the

manufacture of the Product for the Relevant Market.

37.     But for the Non-Competition Clauses, Mr. Johnson would actively prepare for the manufacture of the Product for the Relevant Market.

38.     Since the Non-Competition Clauses broadly restrict Mr. Johnson's activity in connection with the Product in the Relevant Market, he cannot, among other things, engage in "designing, developing [or] manufacturing" of the Product in the Relevant Market.

39.     Absent the Non-Competition Clauses and based on his knowledge and experience as a founding co-owner and principal of both Sherex Fastening Solutions and Sherex Taiwan, Mr. Johnson would (a) incorporate a new entity for the manufacture of the Product in the Relevant Market, (b) hire a design engineer, (c) hire a production engineer, (d) identify necessary production equipment, testing equipment and quality control equipment by conferring with the design and production engineer, (e) lease the necessary space in western New York, where Sherex Fastening Solutions is located, and (f) secure the required equipment.

40.     In Mr. Johnson's experience, it would ideally take approximately six (6) months from the hiring of the design engineer to commence pre-production runs of the Product with the accompanying series of testing and necessary modifications.

41.     Once satisfied with the Product, Mr. Johnson would prepare for full production and sales of the Product by adding the best employees for quality control, sales, marketing, customer service, production, assembly, warehouse, and office support..

42.     Mr. Johnson would provide financing for the start up costs for manufacture of the Product and to continue operations until the company becomes profitable.  Mr. Johnson would expect the first sales of the Product in the Relevant Market to occur approximately

twelve (12) months after initiation of the project to manufacture the Product and that the new venture would break even at the eighteen (18) month point.

43.     Absent the Non-Competition Clauses, Mr. Johnson would be able to directly challenge Defendants' virtual monopoly (with its 90-95% hold on the manufacture of expander plugs for the American and Canadian markets) and lower prices for consumers of the Product in the Relevant Market.

44.     Mr. Johnson cannot execute the intended business plan for which he is prepared because the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement directly target him and subject him to an identifiable antitrust injury since he is precluded, from entering  the Relevant Market for the Product in the new role of manufacturer.

## The Consulting Agreements

45.     Concurrent with the execution of the Stock Purchase Agreement, Mr. Johnson and Mr. Scherf entered into respective Consulting Agreements with Sherex Industries.

46.     Under the terms of the respective Consulting Agreements, Mr. Scherf would serve as Chief Executive Officer of Sherex Industries at an annual salary of $200,000 plus additional compensation, and Mr. Johnson would serve as a Consultant to Sherex Industries providing Consulting Services for sixteen (16) hours per week at the annual rate of $90,000 plus reimbursement of expenses.  In the event Mr. Johnson worked more than sixteen (16) hours per week, such "Supplemental Services" would be payable at a rate negotiated between Mr. Johnson and Sherex Industries.

47.     Subsequent to the execution of the Stock Purchase Agreement on May 22, 2008, Mr. Scherf went on vacation, and Defendants and/or Sherex Industries requested, during Mr. Scherf's absence, Mr. Johnson assume many of Mr. Scherf's responsibilities.

48.     Mr. Johnson assumed extensive responsibilities at no less than forty (40) hours per week for a period from May 23, 2008 through June 19, 2008, including provision of Supplemental Services to the Defendants and Sherex Industries at their specific request when Mr. Scherf's absence extended beyond the originally anticipated time period.

49.     Despite Mr. Johnson's specific request that the Defendants and/or Sherex Industries negotiate the rate at which the Supplemental Services would be payable, the Defendants and/or Sherex Industries refused to so negotiate.

50.     Defendants and/or Sherex Industries only paid Mr. Johnson for the sixteen (16) hours of Consulting Services, but for none of the 98.5 hours worked as Supplemental Services.

51.     On June 19, 2008, in accordance with Section 9.1 of the Consulting Agreement, Mr. Johnson resigned as Consultant and terminated the Consulting Agreement due, among other reasons, to Defendants' and/or Sherex Industries' refusal to negotiate the rate for or to pay him for the 98.5 hours of Supplemental Services.

52.     Notwithstanding the termination of the Consulting Agreement on June 19, 2008, at the specific request of Defendants and/or Sherex Industries, Mr. Johnson worked an additional 18.7 hours.

53.     Accordingly, Mr. Johnson remains uncompensated for 117.2 hours of work provided to Defendants and/or Sherex Industries at their specific request.

## V. CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### SHERMAN ACT SECTION TWO:  MONOPOLIZATION
### CLAIM FOR INJUNCTIVE RELIEF

54.     Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

55.     The Defendants possess monopoly power in the Relevant Market for the Product because they are the *de facto* sole supplier of the Product in the Relevant Market.

56.     Defendants have, among other ways, abused their monopoly power by:

(a)     substantially increasing, and, upon information and belief, planning to continue to increase, the price of the Product in the Relevant Market, prices which are higher than those that would have prevailed in an open, competitive market; and.

(b)     controlling and limiting the number of competitors in the Relevant Market for the Product.

57.     Defendants' monopolization of the Relevant Market for the Product has had, or is likely to have, among other things, the following effects:

(a)     actual and potential competition in the Relevant Market for the Product has been limited, reduced, restrained and suppressed; and

(b)     instead of a free, open and competitive expander plug market, a monopoly has been established and maintained.

58.     Defendants possessed monopoly power in the Relevant Market for the Product at the time they entered into the Stock Purchase Agreement and Consulting Agreement with Plaintiff.

59.     With the inclusion of the Non-Competition Clauses in the Stock Purchase Agreement and Consulting Agreement, Defendants, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, willfully acquired and/or maintained their monopoly power in the Relevant Market for the Product by precluding, among other things, Plaintiff from entering the Relevant Market for the Product as a manufacturer.

60.     Specifically, by (A) defining "Business" in the Stock Purchase Agreement and the Consulting Agreement to mean "the business of designing, developing, manufacturing, marketing, selling and distributing hydraulic and fluid power sealing products, including expansion plugs and SAE plugs" and (B) barring Mr. Johnson from having an interest in or advising or rendering services (as described therein) "to any Person that engages in the Business within the Territory", Defendants unlawfully maintained their monopoly power to exclude new entrants, such as Plaintiff, into the Relevant Market for the Product.

61.     Accordingly, the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement should be reformed, as necessary, to permit Plaintiff to enter the Relevant Market for the Product in the new role of manufacturer.

62.     As a result of Defendants' violations of Section 2 of the Sherman Act, Plaintiff has been injured in his business and property.

63.     Such violation and effects thereof are continuing and will continue unless injunctive relief in the form of reforming the Non-Competition Clauses, to permit Plaintiff to enter the Relevant Market for the Product in the new role of manufacturer, is granted. Plaintiff has no adequate remedy at law.

AS AND FOR A SECOND CAUSE OF ACTION
SHERMAN ACT SECTION TWO:
CONSPIRACY TO MONOPOLIZE

CLAIM FOR INJUNTIVE RELIEF

64.     Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

65.     In violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Defendants have willfully, knowingly, intentionally and with specific intent to do so, combined and conspired to monopolize the Relevant Market for the Product and now hold 90-95% of the Relevant Market for the Product creating a dangerous probability of achieving monopoly power in the Relevant Market for the Product.

66.     The combination and conspiracy to monopolize the Relevant Market for the Product has been effected by the means and the overt acts set forth above, among others, the Defendants' inclusion of the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement.

67.     Specifically, by (A) defining "Business" in  the Stock Purchase Agreement and the Consulting Agreement to mean "the business of designing, developing, manufacturing, marketing, selling and distributing hydraulic and fluid power sealing products, including expansion plugs and SAE plugs" and (B) barring Mr. Johnson from having an interest in or

advising or rendering services (as described therein) "to any Person that engages in the Business within the Territory", Defendants unlawfully combined and conspired to monopolize and to exclude new entrants, such as Plaintiff, into the Relevant Market for the Product.

68.     The Defendants intended by their actions to restrain trade in and create barriers for entry into the Relevant Market for the Product in the manner specified above.

69.     As a result of the conduct alleged above, the Defendants have substantially increased, and, upon information and belief, plan to continue to increase, the price of the Product in the Relevant Market, prices which are higher than those that would have prevailed in an open, competitive market.

70.     The combination and conspiracy to monopolize has had, or is likely to have, among other things, the effects specified above.

71.     As a result of the Defendants' violations of Section 2 of the Sherman Act, the Plaintiff has been injured in his business and property.

72.     Such violation and effects thereof are continuing and will continue unless injunctive relief in the form of reforming the Non-Competition Clauses to permit Plaintiff to enter the Relevant Market for the Product in the new role of manufacturer is granted.  Plaintiff has no adequate remedy at law.

AS AND FOR A THIRD CAUSE OF ACTION
SHERMAN ACT SECTION TWO:  MONOPOLIZATION

ALTERNATIVE CLAIM FOR DAMAGES

73.     Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

74.     The Defendants possess monopoly power in the Relevant Market for the Product because they are  the *de facto* sole supplier of the Product in the Relevant Market.

75.     Defendants have, among other ways, abused their monopoly power by:

(a)     substantially increasing, and, upon information and belief, planning to continue to increase, the price of the Product in the Relevant Market, prices which are higher than those that would have prevailed in an open, competitive market; and.

(b)     controlling and limiting the number of competitors in the Relevant Market for the Product.

76.     Defendants' monopolization of the Relevant Market for the Product has had, or is likely to have, among other things, the following effects:

(a)     actual and potential competition in the Relevant Market for the Product has been limited, reduced, restrained and suppressed; and

(b)     instead of a free, open and competitive expander plug market, a monopoly has been established and maintained.

77.     Defendants possessed monopoly power in the Relevant Market for the Product at the time they entered into the Stock Purchase Agreement and the Consulting Agreement with Plaintiff.

78.     With the inclusion of the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement, Defendants, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, willfully acquired and/or maintained their monopoly power in the Relevant Market for the Product by precluding, among other things, Plaintiff from entering the Relevant Market for the Product as a manufacturer.

79.     Specifically, by (A) defining "Business" in the Stock Purchase Agreement and the Consulting Agreement to mean "the business of designing, developing, manufacturing, marketing, selling and distributing hydraulic and fluid power sealing products, including expansion plugs and SAE plugs" and (B) barring Mr. Johnson from having an interest in or advising or rendering services (as described therein) "to any Person that engages in the Business within the Territory", Defendants unlawfully maintained their monopoly power to exclude new entrants, such as Plaintiff, into the Relevant Market for the Product.

80.     Consequently, Plaintiff's efforts to enter the Relevant Market for the Product in the new role of manufacturer were frustrated with Defendants' inclusion of the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement, despite Plaintiff's substantial demonstrable steps to enter the Relevant Market for the manufacture of the Product.

81.     Despite Plaintiff's intention to enter the Relevant Market for the manufacture of the Product and Plaintiff's preparedness to engage in business, Defendants unlawfully

prevented Plaintiff from engaging in business in the new role of manufacturer by including the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement.

82.     As a result of Defendants' violations of Section 2 of the Sherman Act, Plaintiff has been injured in his business and property.

83.     Accordingly, Plaintiff is entitled to an award of damages in a sum to be proven at trial, to be trebled according to law, plus interest, attorneys fees and costs of suit.

AS AND FOR A FOURTH CAUSE OF ACTION<br>
SHERMAN ACT SECTION TWO:<br>
CONSPIRACY TO MONOPOLIZE

ALTERNATIVE CLAIM FOR DAMAGES

84.     Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

85.     In violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Defendants have willfully, knowingly, intentionally and with specific intent to do so, combined and conspired to monopolize the Relevant Market for the Product and now hold 90-95% of the Relevant Market for the manufacture of the Product creating a dangerous probability of achieving monopoly power in the Relevant Market for the  Product.

86.     The combination and conspiracy to monopolize the Relevant Market for the manufacture of the Product has been effected by the means and the overt acts set forth above, among others, the Defendants' inclusion of the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement.

87.     Specifically, by (A) defining "Business" in the Stock Purchase Agreement and the Consulting Agreement to mean "the business of designing, developing, manufacturing, marketing, selling and distributing hydraulic and fluid power sealing products, including expansion plugs and SAE plugs" and (B) barring Mr. Johnson from having an interest in or advising or rendering services (as described therein) "to any Person that engages in the Business within the Territory", Defendants unlawfully combined and conspired to monopolize and to exclude new entrants, such as Plaintiffs, to the Relevant Market for the Product.

88.     The Defendants intended by their actions to restrain trade in and create barriers for entry into the Relevant Market for the Product in the manner specified above.

89.     As a result of the conduct alleged above, the Defendants have substantially increased, and, upon information and belief, plan to continue to increase, the price of the Product in the Relevant Market, prices which are higher than those that would have prevailed in an open, competitive market.

90.     The combination and conspiracy to monopolize has had, or is likely to have, among other things, the effects specified above.

91.     As a result of the Defendants' violations of Section 2 of the Sherman Act, the Plaintiff has been injured in his business and property.

92.     Consequently, Plaintiff's efforts to enter the Relevant Market for the Product in the new role of manufacturer were frustrated with Defendants' inclusion of the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement despite

19

Plaintiff's substantial demonstrable steps to enter the Relevant Market for the manufacture of the Product.

93.     Despite Plaintiff's intention to enter the Relevant Market for the manufacture of the Product and Plaintiff's preparedness to engage in business, Defendants unlawfully prevented Plaintiff from engaging in business in the new role of manufacturer by including the Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement.

94.     As a result of Defendants' violations of Section 2 of the Sherman Act, Plaintiff has been injured in his business and property.

95.     Accordingly, Plaintiff is entitled to an award of damages in a sum to be proven at trial, to be trebled according to law, plus interest, attorneys fees and costs of suit.

AS AND FOR A FIFTH CAUSE OF ACTION

FOR A DECLARATORY JUDGMENT
AND FOR EQUITABLE RELIEF
UNDER NEW YORK COMMON LAW

96.     Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

97.     The Non-Competition Clauses in the Stock Purchase Agreement and the Consulting Agreement are overbroad and are not a narrowly tailored restraint necessary to protect a legitimate business interest of Defendants since Plaintiff, through Sherex Industries, was solely in the business of distributing the Product in the Relevant Market and never engaged in the design, development or manufacture of the Product.

98.     The purchase price paid for Sherex Industries by Defendants through the Stock Purchase Agreement reflected the price for acquisition of Sherex Industries' distribution network for the Product in the Relevant Market.

99.     The purchase price paid for Sherex Industries by the Defendants through the Stock Purchase Agreement did not include the acquisition of any design, development or manufacturing capacity maintained by Sherex Industries since Sherex Industries had no such capability and was exclusively engaged in the distribution of the Product in the Relevant Market.

100.     Accordingly, the Non-Competition Clauses of the Stock Purchase Agreement and Consulting Agreements are broader than necessary and unreasonably restrain trade in the Relevant Market for the Product.  The Non-Competition Clauses should be reformed and severed to the extent necessary to permit Plaintiff to enter the Relevant Market for the Product in the new role of manufacturer.

101.     Failure to reform and sever the specified provisions of the Non-Competition Clauses would cause irreparable harm to Plaintiff personally and to his business.

102.     Plaintiff has no adequate remedy at law

### AS AND FOR A SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT
### UNDER NEW YORK COMMON LAW

103.     Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

104.    Pursuant to the terms of the Consulting Agreement, commencing May 22, 2008 through June 19, 2008, Plaintiff made himself available for and in fact provided no less than sixteen (16) hours per week of Consulting Services to Sherex for a consulting fee of $90,000 per year.

105.    The Consulting Agreement further stated that Supplemental Services, in excess of the sixteen hours per week, if provided, would be payable at an appropriate hourly rate negotiated in good faith by Sherex Industries and Plaintiff.

106.    In addition, to the sixteen (16) hours per week of Consulting Services provided by Plaintiff from May 22, 2008 through June 19, 2008, Plaintiff also provided Supplemental Services totaling 98.5 hours.

107.    The Supplemental Services exceeded  16 (sixteen) hours per week for a total of 98.5 hours from May 22, 2008 through June 20, 2008.

108.    Despite the obligation of the Defendants, through Sherex Industries, to negotiate in good faith with Plaintiff to set an appropriate hourly rate for the Supplemental Services, the Defendants, through Sherex Industries breached the Consulting Agreement and refused to set an appropriate hourly rate for the Supplemental Services.

109.    Plaintiff was damaged by Sherex Industries' breach, through the Defendants, of the Consulting Agreement since an appropriate hourly rate was not set for the Supplemental Services, and Plaintiff was never paid for the Supplemental Services provided to the Defendants, through Sherex Industries.

110.    Under the terms of the Consulting Agreement, Plaintiff is entitled to compensation in a sum to be determined at trial for the Supplemental Services in excess of the sixteen (16) hours per week of Consulting Services performed prior to his June 19, 2008 resignation and termination of the Consulting Agreement pursuant to Section 9.1 thereof.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### QUANTUM MERUIT/UNJUST ENRICHMENT UNDER NEW YORK COMMON LAW

111.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

112.    Pursuant to the terms of the Consulting Agreement, commencing May 22, 2008 through June 19, 2008, Plaintiff made himself available for and in fact provided no less than sixteen (16) hours per week of Consulting Services to Defendants, through Sherex Industries, for a consulting fee of $90,000 per year.

113.    In addition, Plaintiff also provided Supplemental Services to Defendants, through Sherex Industries, in excess of the sixteen (16) hours per week of Consulting Services.

114.    Prior to his June 19, 2008 termination of the Consulting Agreement, pursuant to Section 9.1 therein, Plaintiff in good faith worked 98.5 hours and an additional 18.7 hours thereafter, for a total of 117.2 hours.

115.    The Defendants, through Sherex Industries, were aware of and accepted the work performed by Plaintiff to Defendants, through Sherex Industries.

116.    Based on the terms of the Consulting Agreement, Plaintiff expected to be compensated for the hours of work he performed beyond the Consulting Services.

117.    The reasonable value of additional hours of work performed by Plaintiff and provided to Defendants, through Sherex Industries at their specific request is no less than $12,685.10 at the rate of $108.17 for 117.2 hours, based on the sum of $90,000 annually payable to Plaintiff for Consulting Services of sixteen (16) hours per week..

118.    Accordingly, Plaintiff is entitled to compensation for the unpaid hours of work he performed beyond the Consulting Services in a sum to be determined at trial.

WHEREFORE, Plaintiff requests the Court to declare the legal rights, relations, and duties of the parties with respect to the following matters:

A.      That the Court declare, adjudge and decree that the Defendants committed the violations of federal and/or state law alleged herein;

B.      That the Defendants, their directors, officers, employees, agents, successors and members be enjoined and restrained from, in any manner, directly or indirectly committing violations of Section 2 of the Sherman Act, in which they have been engaged, including but not limited to restricting entry of new competitors into the Relevant Market for the Product; and that Defendants their directors, officers, employees, agents, successors and members be enjoined and restrained from, in any manner, directly or indirectly committing violations of statutes having a similar purpose and effect;

C.      That the Court declare the Non-Competition Clauses in the Stock Purchase

Agreement and the Consulting Agreement overbroad and unenforceable.

      D.      That the Court provide equitable relief to Plaintiff under either (1) the relevant provisions of the Sherman Act and the antitrust laws or (2) New York common law principles by reforming and severing the Non-Competition Clauses in the Stock Purchase Agreement and Consulting Agreement to the extent necessary to permit Plaintiff to enter the Relevant Market for the Product in the new role of manufacturer;

      E.      That the Court award damages sustained by Plaintiff in an amount to be proven at trial, to be trebled, where appropriate, according to law, plus interest, attorneys' fees and costs of suit;

      F.      That the Court award Plaintiff his costs and prejudgment interest and such other and further relief as this Court may deem just and proper.

DATED:      December 2, 2008
                New York, New York

                                The Ottinger Firm, P.C.

                                By: _____
                                Robert W. Ottinger (RO-8879)
                                South Street Seaport
                                19 Fulton Street, Suite 408
                                New York, New York 10038
                                Telephone: 212-571-2000
                                Attorneys for Plaintiff